Gary **WOODS** as Tax Matters Partner of Tesoro Drive Partners, Plaintiff,

v.

**UNITED STATES** of America, Defendant.

Gary Woods as Tax Matters Partner of SA Tesoro Investment Partners, Plaintiff,

v.

United States of America, Defendant.

Case Nos. SA–05–CA–216–H, SA–05–CA–217–H.

United States District Court, W.D. Texas.

Sept. 21, 2010.

---

3. Defendant Glaser did not file a response to Spoon's motion for leave to file a surrebuttal.

Anthony P. Daddino, Joel N. Crouch, Michael E. McCue, Stephanie D. Mongiello, Meadows, Collier, Reed, Cousins & Blau, L.L.P., Dallas, TX, for Plaintiff.

Dennis M. Donohue, John A. Lindquist, U.S. Dept. of Justice, Washington, DC, Jonathan L. Blacker, Joseph A. Pitzinger, Department of Justice, Dallas, TX, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

HARRY LEE HUDSPETH, Senior District Judge.

These two consolidated cases are petitions for judicial review of final partnership administrative adjustments, with jurisdiction in this Court founded upon 26 U.S.C. § 6226(a)(2). In cause number SA–05–CA–216, Plaintiff Gary Woods is requesting the Court to order the readjustment of certain items in the partnership return of Tesoro Drive Partners, a Texas general partnership, for the calendar year 1999. In cause number SA–05–CA–217, the same Plaintiff, Gary Woods, is requesting the Court to order the readjustment of items in the partnership return of SA Tesoro Investment Partners, a Texas general partnership, for the same calendar year. The two cases were consolidated for trial, and beginning September 13, 2010, were tried to the Court without the intervention of a jury. On September 16, 2010, the Plaintiff rested his case-in-chief, and the Defendant moved for judgment in its favor as a matter of law. The Court, having considered the motion, found that it should be granted.

This is a hard case, but not a difficult one. Billy Joe "Red" McCombs is a successful and famous Texas entrepreneur, civic leader, and philanthropist. He is also well known outside the State of Texas,

partly because of his former ownership of national sports franchises, including the San Antonio Spurs professional basketball team and the Minnesota Vikings professional football team. His numerous and diversified business interests and investments are gathered under the umbrella of McCombs Enterprises, a sole proprietorship headquartered in San Antonio, Texas. For more than 30 years, his "right-hand man" has been Gary Woods, the Plaintiff in this case, who holds the title of President of McCombs Enterprises. A high degree of trust and confidence exists between McCombs and Woods. In fact, on December 15, 1993, McCombs executed a universal power of attorney in favor of Woods, which generally authorizes the latter to take any action on behalf of McCombs which could be taken by McCombs himself. In November 1999, Plaintiff Woods, on his own behalf and on behalf of McCombs, agreed to participate in a tax shelter known as COBRA. The evidence shows that COBRA was dreamed up by the law firm of Jenkens & Gilchrist and was being marketed by the accounting firm of Ernst & Young to a few selected high net-worth individuals.

For purposes of this order, it is unnecessary to discuss the details of the COBRA tax avoidance scheme or plan. Suffice it to say that it involved a series of specific steps which, in order to execute the plan, had to be completed by December 31, 1999.

Woods decided to participate in COBRA, on his own behalf and on behalf of McCombs. The steps required by the CO-BRA plan are described in great detail in the evidence in this case, and there is no need to repeat those details here. Suffice it to say that on November 12, 1999, Woods began the implementation of COBRA plans for himself and McCombs by forming three sets of business entities: two limited liability companies,[1] two general partnerships,[2] and two Subchapter S corporations. Soon after these entities were formed, Woods contributed $791,000.00 to his LLC, and McCombs contributed $2,429,000.00 to his LLC. The very next day, the LLCs invested $2,300,000.00 in thirty-day foreign currency options. Each "long" option on a currency was paired with a "short" option on a different currency.[3] On November 23, 1999, the LLCs transferred the options to the partnerships. The cash remaining in the LLCs was also transferred to the partnerships. Within the next 30 days, each partnership used this cash to purchase shares in Sun Microsystems. On December 15, 1999, one of the partnerships (Tesoro Drive Partners) sold its shares in Sun Micro, resulting in a short-term capital gain of approximately $5,000.00. Tesoro Drive Partners then used its cash to buy Canadian Dollars.

The thirty-day currency options were due to expire on December 20, 1999. However, on December 17, 1999, Deutsche Bank offered Woods $3,000,000.00 for the early termination of the currency option spreads. Woods accepted the offer, resulting in a profit to the partnerships of $700,000.00.[4]

1. The names of the LLCs were GW Tesoro Investments, LLC (for Gary Woods) and BJM Tesoro Drive Investments, LLC (for Billy Joe McCombs).

2. The two partnerships were named Tesoro Drive Partners and SA Tesoro Investment Partners, and Woods and McCombs were the only partners in both.

3. Four foreign currencies were utilized: the Australian Dollar, the Japanese Yen, the German Deutsche Mark, and the Swiss Franc.

4. The specific profit breakdown was Tesoro Drive Partners $650,000.00; SA Tesoro Investment Partners $50,000.00.

As the year 1999 was coming to a close, both partnerships transferred all their remaining assets to the two Subchapter S corporations, effectively resulting in the liquidation of the partnerships. One of those Subchapter S corporations, Tesoro Drive Investors, Inc., received the Canadian Dollars, while the other, SA Tesoro Investors, Inc., received the remaining shares in Sun Microsystems. What these entities did next was the whole point of the COBRA strategy. Tesoro Drive Investors, Inc. sold the Canadian Dollars, which Woods and McCombs claimed resulted in an ordinary loss for tax purposes of $13,353,162.00. SA Tesoro Investors, Inc. sold the remaining shares of Sun Microsystems stock, which, according to Woods and McCombs, resulted in a short-term capital loss for tax purposes in the amount of $32,297,786. This treatment was based on the central theory of COBRA, which was that the basis of each partnership's property was the cost of the "long" currency options, while the "short" options could be disregarded for tax purposes.

■ In the Fifth Circuit, whether a transaction is honored as legitimate for tax purposes requires the Court to determine whether the transaction possesses "economic substance." *Klamath Strategic Investment Fund v. United States*, 568 F.3d 537, 544 (5th Cir.2009). As the Court of Appeals recently framed the issue in *Klamath*,

"Thus, if a transaction lacks economic substance compelled by business or regulatory realities, the transaction must be disregarded even if the taxpayers profess a genuine business purpose without tax avoidance motivations."

*Id.* It is also clear that the "transaction" which must have economic substance is the transaction that generates the tax benefit, not collateral transactions that do not produce tax benefits. *Klamath*, 568 F.3d at 545; *Coltec Industries, Inc. v. United States*, 454 F.3d 1340, 1356 (Fed. Cir.2006); *Nicole Rose Corporation v. Commissioner*, 320 F.3d 282, 284 (2nd Cir. 2003). In seeking to detect the presence or the absence of economic substance in the instant case, therefore, the Court cannot focus on those transactions which the taxpayer claims confer economic substance, i.e., profitable trades in currency options and Sun Microsystems stock. These were collateral transactions, which not only did not produce the tax benefit at issue in this case, but did the opposite—they resulted in taxable income to the partnerships. Instead, the "transaction" that is relevant in this case is the Plaintiff's use of two partnerships with a six-week life span to conduct that trading for the sole purpose of generating a paper loss. *See Merryman v. Commissioner*, 873 F.2d 879, 881 (5th Cir.1989). The "Tinker to Evers to Chance"[5] routine utilized by the taxpayers in this case (the transfer of assets from individuals to LLCs to partnerships to Subchapter S corporations) was not "compelled or encouraged by business or regulatory realities," nor was it "imbued with tax independent considerations." *Frank Lyon Company v. United States*, 435 U.S. 561, 583–84, 98 S.Ct. 1291, 55 L.Ed.2d 550 (1978). It was totally lacking in economic substance and was for the sole purpose of creating a tax benefit. Therefore, both the ordinary loss and the capital loss claimed by the respective partnerships should be disregarded for tax purposes. The Defendant is entitled to judgment in its favor with respect to the Plaintiff's petition for review of those particular adjustments to the partnership returns.

---

**5.** The record does not reveal whether the Plaintiff's economic expert, Dr. Don Chance, is related in anyway to first-baseman Chance.

Still unresolved is the question whether the Internal Revenue Service was justified in imposing certain penalties in addition to the income taxes due and owing as a result of the adjustments. In this connection, the Plaintiff contends that no penalties are justified, relying in part on the defense of reasonable cause and good faith. The Court instructed the Plaintiff to file a brief in support of his position no later than September 27, 2010, and allowed the Defendant until October 7, 2010 to respond. Upon reviewing those briefs, the Court will determine whether additional evidence from either party will be required in connection with the issue of penalties.

It is therefore ORDERED that the Defendant's motion for judgment as a matter of law with respect to the disallowance of the ordinary and capital losses claimed on the partnership returns in this case be, and it is hereby, GRANTED.

It is further ORDERED that Plaintiff Gary Woods file his brief with respect to the issue of penalties no later than September 27, 2010.

It is further ORDERED that the Defendant respond to the Plaintiff's brief no later than October 7, 2010. After reviewing the briefs filed by the parties, the Court will determine whether additional testimony should be taken with respect to this issue.